## Rockefeller v. Bennett

Bloom & Bloom, for plaintiff; Schaffer & Machmer, for defendant.

LLOYD, J., October 19, 1931.—This is an action in assumpsit to recover for services rendered by the plaintiff, as an architect, in preparing the necessary plans and specifications and in supervising the erection and construction of a two-story brick dwelling and a brick garage in the rear of said dwelling,

together with a driveway and turntable to be used in connection with said garage.

The premises are located at No. 400 North Front Street, Sunbury, Pa., a short distance from the courthouse. Upon motion of counsel for the plaintiff, the court permitted the jury to view the premises. The trial resulted in a verdict for the plaintiff. A motion for a new trial followed. The defendant now assigns the action of the court in granting the view and also after-discovered evidence in support of the motion.

The first question for consideration arises out of the action of the trial judge in permitting the jury to view the premises. The grounds upon which this assignment are based are these: (a) That the application came too late. (b) That a view would not aid the jury in determining the issues.

The material facts with reference to the view by the jury are these:

Immediately after the jury was sworn and before any oral evidence was received, counsel for the plaintiff moved the court to permit the jury to view the premises. The motion was allowed over the objection of counsel for defendant. The view was postponed and the trial proceeded until the court was ready to adjourn for the noon recess. The trial judge then instructed the jury as follows:

"Now, members of the jury, in view of the bulky nature of the pleadings and the number of items that are involved in this case, and also in view of the fact that this residence is but a short distance from the courthouse, I will now permit you to go down there and look at it. You will be in charge of the court crier, George Grow, and also a tipstaff, Abe Moyer; you will not talk to anybody about this case on your way down there, while you are there, nor on your way back, not even to the officers of the court who will have you in charge. I have no objection to the lawyers accompanying the jury to look at the property, but you must not talk to any of the lawyers and the lawyers must not talk to you about anything at all; nobody must talk to you about any matter in controversy here at all. You will simply go down there and look at the property for the purpose of enabling you to better understand the evidence as it comes to you from the witnesses in the witness-stand. You will ask no questions and take no instructions from anybody, and do not let anybody talk to you about anything at all; you simply go down and look at the property as it is located, as it appears from the outside. There is no objection, if the defendant desires to show you on the inside, of your going inside; if she does not, then you will look at the outside of the property and come back."

At this juncture the following colloquy took place between the court and counsel:

"By Mr. Schaffer: Will your honor say to the jurors that they may not among themselves discuss the case? By the court: Yes, oh, yes; you will not draw any conclusions from anything you see while you are down there; you must await the hearing of the evidence in the case before reaching any conclusion. As I said to you a moment ago, the purpose of letting you go down there is that you may better understand the testimony in the case, because this case must be decided on the testimony that comes to you from the witness-stand. Do not discuss the case among yourselves, and do not reach any conclusion until you have received the instructions from the court as to the law pertaining to the issues involved here and after all the testimony is in.

"By Mr. Bloom: With respect to the interior of the house, will your honor instruct the jury. By the court: I will not permit them to go inside unless the defendant is willing to have them view the interior of the house. If she does not invite them inside, all they will see will be the outside of the house. The interior

of the house is not so much involved; that is, the questions arising about that are not so material.

"By Mr. Schaffer: Counsel for the defendant does not care to go up there with the jury, and we do not think that counsel for the plaintiff should go, either; will the jury go along with the constables? By Mr. Bloom: That is entirely satisfactory to us. By the court: We will now take a recess until 1.30 o'clock this afternoon."

The extent of the view was not ascertained, but we believe the instructions were carried out and the view limited to such as could be had from an ocular examination of the surroundings outside of the buildings. The jury returned and the trial proceeded promptly, pursuant to our adjournment, at 1.30 o'clock P. M., which is the usual hour for reconvening the court at the noon recess. The locus in quo is about five squares from the courthouse and no delay in the trial occurred by reason of the view. The present motion is, therefore, not within that class of motions, the denial of which is sustained on the ground that to have granted it would have caused a delay in the trial; nor in that class in which the jury upon view inspected the work alleged to have been defective. The view was limited to an ocular examination of the locus in quo, and there is no contention that the jury did anything else or that irregularities occurred during the view. From a reading of the seventh, ninth and tenth paragraphs of the counterclaim and the corresponding paragraphs of the plaintiff's reply, it is evident that a view of the premises would greatly enable the jury to more intelligently apply and comprehend the testimony presented in court in relation to the magnitude and importance of those issues. A reading of the testimony bearing upon those issues justified the inference. The testimony introduced by the plaintiff fully sustains the verdict. There is no contention that it does not. The contention that the jury was prejudiced by the view, therefore, amounts to a mere conjecture. We, therefore, hold that the request was both timely and reasonable and its allowance proper. The assignment cannot be sustained.

The remaining question for our consideration is based upon the ground of after-discovered evidence.

The basis of plaintiff's claim was that he had rendered services as an architect. His right to recover depended upon whether he had the qualifications and possessed and exercised that degree of skill, knowledge and judgment ordinarily possessed and exercised by ordinarily proficient architects. His competency or "efficiency" was challenged in every paragraph, excepting the last, of the counterclaim, consisting of eleven paragraphs and filed September 20, 1930. The plaintiff's reply, denying the inefficiency as averred in the counterclaim, was filed December 5, 1930. His qualifications were directly in issue. That the defendant might be called upon to rebut plaintiff's testimony in relation thereto could easily have been anticipated. The defendant, by her printed argument, admits it is a "most vital particular in the case. Its connection is such that when introduced into the trial it will defeat the right of the plaintiff to recover." It is, therefore, plainly evident that the defendant herself considered it as most important to the defense, and due diligence, therefore, called upon her to be prepared to meet a situation so palpable. Further, an examination of the testimony shows that the very first question propounded by defendant's counsel to the plaintiff on his cross-examination was in relation to his registration, and, subsequently, by further cross-examination, he elicited the testimony he now seeks to contradict by a new trial. The testimony closed during the mid-afternoon of January 7, 1930. Essentially two days had elapsed since the inquiry and the giving of the testimony now sought to be rebutted. We are of the opinion

that at least an effort during that period should have been made to secure the rebutting testimony.

It is the general rule that a new trial will not be granted when the newly-discovered evidence is such as by the exercise of due diligence could have been obtained at the former trial. It is a rule of policy, "intended to secure care and vigilance and prevent parties from coming forward subsequently with evidence which close investigation would have disclosed at the time; for it is said that a failure of justice in a particular instance is not so great an evil as that there should be no certain end to litigation."

The testimony in the case embraces a large number of items and was extensive in volume. The case was carefully tried and submitted under a charge to which there are no objections. We do not believe that the mere contradiction of the plaintiff in relation to the testimony complained of would produce any different verdict.

And now, October 19; 1931, defendant's motion is hereby discharged and a motion for a new trial refused.

An exception is noted and bill sealed for the defendant.

From C. M. Clement, Sunbury, Pa.